IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONAL ELECTRICAL BENEFIT FUND       :

    v.                                 :    Civil Action No. DKC 11-0893

AC-DC ELECTRIC, INC. d/b/a
Q & S ELECTRIC CO.                     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action arising under the Employee Retirement Income Security Act of 1974 ("ERISA") is the motion for default judgment filed by Plaintiff National Electrical Benefit Fund ("the Fund"). (ECF No. 6). The relevant issues have been briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Plaintiff's motion will be granted in part and denied in part without prejudice to renewal.

**I.  Background**

The following facts are alleged in the complaint. The Fund is a multiemployer employee pension benefit plan within the meaning of section 3(2) of ERISA, *see* 29 U.S.C. § 1002(2), and two of its trustees have brought this action on its behalf. The Fund was established by an agreement between the International Brotherhood of Electrical Workers ("IBEW") and the National

Contractors Association, and it provides pension benefits to employees whose employers enter into collective bargaining agreements ("CBAs") with the IBEW.  Defendant AC-DC Electric is a New Jersey corporation and a signatory to CBAs with several IBEW unions.  Pursuant to these CBAs, Defendant must submit contributions to the Fund on behalf of its employees and abide by the terms of the Fund's Restated Employees Benefit Agreement and Trust ("trust agreement").  The trust agreement requires Defendant to permit the Fund's trustees, or their authorized representatives, to audit its employment and payroll records in order to ensure that Defendant's contributions to the Fund are accurate.  The trustees requested to audit Defendant's books for the years 2006 through 2010, but Defendant refused this request.

On April 6, 2011, the trustees filed this action on the Fund's behalf, seeking an order requiring Defendant to submit to an audit for the years 2006 through 2010.  The complaint also seeks to have Defendant pay all delinquent contributions identified by the audit, as well as liquidated damages, interest, and fees related to initiation of the action and the conduct of the audit.  Defendant, whose corporate secretary was served with a copy of the complaint on April 18, 2011, did not answer or otherwise respond, and the Fund subsequently moved for entry of default and default judgment.  The clerk entered default against Defendant on June 3, 2011.

## II. Analysis

Where a default has been previously entered and the complaint does not specify a certain amount of damages, the court may enter a default judgment, upon the plaintiff's application and notice to the defaulting party, pursuant to Fed.R.Civ.P. 55(b)(2). A defendant's default, however, does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002). The United States Court of Appeals for the Fourth Circuit has a "strong policy" that "cases be decided on their merits," *id.* (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate where a party is essentially unresponsive, *SEC v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C.Cir. 1980)).

Here, nearly eight months have passed since Defendant's corporate secretary was served with the complaint, but Defendant has failed to respond in any manner. As a result, the "adversary process has been halted because of [this] essentially unresponsive party." *Id.* Default judgment against Defendant will thus be warranted if the complaint adequately pleads an ERISA claim. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (explaining that, although the defendant

is deemed to admit every well-pleaded allegation of the complaint upon entry of default, the court must nonetheless determine whether those allegations have been adequately pleaded and thus warrant relief).

The facts set forth in the complaint, for which the Fund provides supporting documentation in its motion for default judgment, are sufficient to state a claim under ERISA. Section 502(a)(3) of ERISA authorizes parties to enforce the provisions of their CBAs and the trust agreement. *See* 29 U.S.C. § 1132(a)(3) (providing that a civil action may be brought: "(A) to enjoin any act or practice which violates the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any . . . terms of the plan."). According to the complaint, Defendant is a signatory to CBAs obligating it to comply with the trust agreement, which requires Defendant to submit to an audit at the request of the Fund's trustees. Despite demands by the trustees, however, Defendant purportedly refused to permit the Fund to conduct such an audit for the years 2006 through 2010. Based on these undisputed allegations, the Fund has stated a claim for which relief is warranted, thereby establishing Defendant's liability under ERISA. *See La Barbera v. Fed. Metal & Glass Corp.*, 666 F.Supp.2d 341, 348 (E.D.N.Y. 2009) (entering default judgment in favor of a fund's trustees where the

trustees alleged that an employer had refused to submit to an audit despite being contractually bound to do so by a CBA and trust agreement).

With Defendant's liability established, the analysis now turns to the issue of relief. The Fund sought the following forms of relief in both the complaint and the motion for default judgment: (1) an injunction requiring Defendant to submit to an audit for the years 2006 through 2010 within ten days; (2) an order that Defendant pay any delinquent contributions identified by the audit, along with liquidated damages, interest, and fees associated with the audit; and (3) an award of attorney's fees and costs related to the initiation of this action. Each of these requests will be analyzed in turn.

ERISA authorizes courts to grant "equitable relief as . . . appropriate" where a plaintiff brings a successful action to enforce the requirements of ERISA. *See* 29 U.S.C. § 1132(g)(2)(E); *see also La Barbera*, 666 F.Supp.2d at 350. "Such relief may include an injunction ordering the defendant to submit to an audit." *Int'l Painters & Allied Trades Indus. Pension Fund v. Exec. Painting, Inc.*, 719 F.Supp.2d 45, 52 (D.D.C. 2010). Indeed, pursuant to ERISA, benefit plan trustees have the right to review the records of employers contributing to the plans. *Id.* (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 581 (1985)).

Because ERISA provides for injunctive relief as a possible remedy, an injunction requiring Defendant to submit to an audit is warranted as long as the Fund establishes the prerequisites for an injunction – irreparable harm and the absence of an adequate legal remedy. *La Barbera*, 666 F.Supp.2d at 350-51. The Fund submitted a declaration from its counsel asserting that both of these prerequisites had been satisfied based on the facts of this case. (*See* ECF No. 6-3 ¶¶ 9-10). Courts considering analogous circumstances – a defendant's refusal to permit an audit and subsequent unwillingness to engage in resulting court proceedings – have generally agreed and granted requests for injunctive relief. *E.g.*, *La Barbera*, 666 F.Supp.2d at 350-51 (granting an injunction requiring an employer to submit to an audit where an employer "ha[d] defaulted and ha[d] further refused to submit to the requested audit"). A similar conclusion is appropriate in the present case, and the Fund's request for an order requiring Defendant to submit to an audit within ten days will be granted. *See Exec. Painting*, 719 F.Supp.2d at 52-53; *Flynn v. Mastro Masonry Contractors*, 237 F.Supp.2d 66, 70 (D.D.C. 2002).

While the facts of this case justify injunctive relief, they do not – at present – warrant a court order permitting the Fund to collect delinquent contributions, liquidated damages, interest, and fees stemming from the audit. Indeed, this

6

request is premature. The Fund does not currently allege that Defendant failed to make required contributions; rather, the Fund merely asserts that its trustees must conduct an audit to determine if Defendant has in fact failed to do so. As a result, the Fund's request for a "blank check" authorizing it to collect amounts that are currently unknown is denied. Should the audit reveal delinquent contributions, however, the Fund may petition the court, with proper evidentiary support, for such relief. *See La Barbera*, 666 F.Supp.2d at 350 (permitting the plaintiff to return to court to request amounts owed for delinquent contributions, liquidated damages, interest, and other fees following completion of an audit); *Int'l Painters & Allied Trades Indus. Pension Fund v. Advanced Pro Painting Servs.*, 697 F.Supp.2d 112, 117 (D.D.C. 2010) (allowing the plaintiffs to seek "additional or supplemental judgments if the audit reveals additional delinquencies").

Finally, the Fund seeks an award of $1,919 for the attorney's fees and costs that it has incurred in obtaining this judgment, both of which are generally available in ERISA actions. *See* 29 U.S.C. § 1132(g)(2).[1] Unlike with allegations pertaining to liability, however, a defendant is not deemed to admit allegations relating to damages and other fees, *see*

---

[1] This amount includes $1,419 in attorney's fees, $350 in filing fees, and $150 in costs for a process server.

*Lawbaugh*, 359 F.Supp.2d at 422, and the plaintiff bears the burden to establish entitlement to recovery, *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 ($2^d$ Cir. 1992). Where a complaint does not specify the amount of sought, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (citing *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 ($2^d$ Cir. 1975). While the court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Id.* at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). In large part here, the Fund fails to provide sufficient evidence to enable the court to make this determination.

The court evaluates the reasonableness of an attorney's fee award by comparing the requested amount to the lodestar amount, which is defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). Other courts in this district have found Appendix B of the Local Rules, which provides guidelines for hourly rates based on attorney experience, particularly instructive in determining whether an hourly rate is reasonable. *See, e.g., Asbestos Workers Local 24 Pension Fund v. NLG Insulation, Inc.*, 760 F.Supp.2d 529, 543 (D.Md. 2010); *Monge v.*

*Portofino Ristorante*, 751 F.Supp.2d 789, 800 (D.Md. 2010). Appendix B provides for an hourly rate in excess of $275 only when attorneys have been admitted to the bar for at least fifteen years. *See* Local Rules, App. B. at § 3(d).

Here, the declaration submitted by counsel for the Fund states that she worked 4.2 hours at a rate of $338 per hour, resulting in a total fee of $1,419. While the number of hours worked appears reasonable in light of the numerous documents that counsel has filed in this case, the record currently fails to demonstrate the reasonableness of the requested hourly rate. Indeed, at the present time, it is wholly devoid of any information supporting the rate listed in counsel's declaration. For that reason, the Fund's request for attorney's fees will be denied without prejudice to its right to renew.

The Fund also seeks $500 in costs as part of its motion for default judgment – $350 in filing fees and $150 in fees related to serving process on Defendant. The docket reflects that the Fund paid the $350 filing fee in this case, and it is, therefore, entitled to recover this amount. The Fund has provided no documentation to support its claim for $150 in process server fees, and the request for an award as to that amount will thus be denied without prejudice to the Fund's right to renew.

**III. Conclusion**

For the foregoing reasons, Plaintiff's motion for default judgment will be granted in part and denied in part without prejudice to renewal. A separate Order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge